All right, we'll hear counsel first in Massachusetts Mutual Life Insurance. Good morning, Your Honors. Good morning, Ms. Posman. You're from New York, aren't you? Yes, I am. Welcome. Thank you. It's miserable, rainy weather there. I'm sure in Santa Barbara it's a lot more beautiful. May it please the Court, my name is Eva Posman. I represent the appellant, Karen Kaiser, who is the widow of Larry Kaiser and the administratrix of his estate in this interpleader action. Are you reserving any time for rebuttal? I am. I have reserved three minutes. Okay, but we have to say that's fine. It's fine. Thank you. I suppose we've been asked to limit our discussion, our argument today to the issue of unjust enrichment. We didn't mean to completely foreclose you from getting into anything that gets into that. So you may slide in. Yeah, go ahead. That was not my understanding. Okay, we'll see where that takes us. I'm sorry. Yeah, it's out. I suppose the first thing I should address is perhaps the standard of review. Normally legal issues on summary judgment are decided under a standard of de novo review by the appellate court. And equitable issues are decided under the standard of whether the district court properly exercised its discretion. Here, however, the district court made no findings whatsoever with respect to the issue of unjust enrichment. And, therefore, I would respectfully submit that perhaps the standard here that should be used is, again, a de novo review. So is your view that both counts three and counts four state claims for unjust enrichment? No, only three. Only three? Yes. The fourth was the issue, as far as I recall, of whether the insurance company had lost the change of designation of beneficiary form. And we have never been able to find evidence to support that, although we believe that that may have existed. But we cannot establish that. So it's the third claim, which makes allegations a fact and incorporates allegations of fact from the rest of the cross claims, that establishes a claim for unjust enrichment. And the relief sought is in the third cross claim. And the relief sought is in paragraph 45. This language should be changed by plaintiff or by order of this court. That, in your view, sufficiently asserts a constructive trust? I think it sufficiently asserts a claim for equitable remedy. And I think under Rule 8, all that's required is a notice pleading, and I think that's sufficient to establish that. You think that that sufficiently informed your adversary that you were making a claim for unjust enrichment? That I was seeking equitable relief. And when we moved for summary judgment, we moved on the grounds of unjust enrichment with the remedy of a constructive trust, and my adversary opposed that on the merits, never raised the issue that this took him by surprise. Had he done that, we would have had an opportunity, perhaps, to seek leave to replete or similar relief. But that was not done, and I believe that the appellee, Mrs. Curley, the widow of the former wife of Mr. Kaiser, waived that claim by not raising it below. Similarly, the court below did not make any statement that it was denying the third cross-claim based on the fact or that it was denying unjust enrichment based on the fact that that claim had not been asserted, nor the relief of a constructive trust requested. That was not discussed in any way by the decision below. Was it argued orally? Was the summary judgment argued orally? No, it was on papers. I see. Agreed. So unless the panel has any further questions on that issue, should we turn to the merits of the unjust enrichment claim? Sure. The essence of unjust enrichment is that a party receives the benefit, retains the benefit, and in circumstances where it would be inequitable for the party to retain that benefit. And the remedy of a constructive trust is what is used to prevent unjust enrichment. There's no fixed rule on when a constructive trust should be imposed. Courts have discretion in imposing it, and I admit that the facts of this case cry out for the imposition of a constructive trust. The evidence of Mr. Kaiser's intent to benefit his new wife and infant child and not his ex-wife, who was suing him. This is Judge Aldisert. I'm sorry to interrupt you. On this issue you are now addressing, are there any other cases with the facts presented in this case? In this case involving a beneficiary of an insurance policy, give us any cases where that has been applied. In Spinner v. Fulton, which... Was that the case, Skinner? Was there a question of a beneficiary in that case? There was a question of a beneficiary by default. But there was no beneficiary on the policy in Skinner, was there? The beneficiary on the policy in Spinner was the next of kin. There was no... No named. No named person. It was the next of kin. However, I think the facts of Spinner are significantly relevant here, and if anything, the facts here cry out more for equity to be done. There you had an estranged husband and parents with whom the decedent had a close relationship. Here you have a divorced spouse who is engaged in bitter litigation with the decedent at the time of his death, and he has a new wife and infant child who are dependent on him. He is the sole breadwinner for the family. Yes, I understand that, but going back to Spinner, this was Judge Rambo's case, I believe, and she made the point that Spinner did not involve the affirmative designation of a beneficiary or the change of a longstanding beneficiary or a lengthy marriage with children. Then she goes on to say, Judge Rambo, had those facts been present, a different analysis might well have been warranted. Your Honor... Could you comment on that? Yes, Your Honor. First of all, it's a different analysis. It might well be warranted. It doesn't say what that analysis would be, but I think here the facts are such that they would require almost the identical analysis, except that here I think the facts are even more compelling. In Spinner, the court stated that equitable relief may be appropriate when the failure to name a policy's beneficiary was the result of inattention. You say that's what happened here. Absolutely. I can give you an endless list of the bases for mistake here. First of all, you have a separation agreement that contains a broad, broad waiver provision, which Mr. Kaiser believed incorporated insurance, and he was assured by his counsel, who is a well-regarded counsel in Connecticut, that in fact the agreement accomplished their intent, the party's intent, which was that following the agreement, there would be no rights or obligations as between the parties other than as specifically set forth in the agreement. But there's no specific mention of life insurance. No, and that in itself is significant, since this was one of the larger assets of the parties. Each of them had a million-dollar policy, and the fact that it's not mentioned... We should infer what? I'm sorry? We should infer what? You should infer that in fact the waiver included everything, unless it was expressly, specifically reserved, as the waiver states, as the release states in the agreement. Otherwise, what would be the point of the agreement if in fact one of the largest assets that each party had was not dealt with in this agreement? It's sort of inconceivable. It seems that the cases, the few cases that there are, and there are very few, like Martin, for example, look to the intention of the testator, I guess it is. Correct. We'll just have to hear from the other side as to what he has to say about that. Well, if you'd like me to address the issue of the waiver, and Martin Owen specifically... Well, go ahead. Is that all right? Yeah, yeah, of course. Sure. I noticed that my time is almost up.  Martin Owen does not say... Why don't you yell into the mic? Martin Owen and Anderson, the two Connecticut cases, agree that you look to the intent of the parties. I think the intent of the parties is stated as clearly as possible in the separation agreement that there was to be nothing between them other than what was specifically provided in the agreement. And Martin Owen does not say anything to the contrary. You're on our time now, so it's okay. Okay, thank you. Martin Owen does not say that you have to specifically refer to insurance. What Martin Owen says is that where the waiver agreement provided only for the waiver of assets, it did not cover beneficiary rights. Here in this broad waiver agreement between Mrs. Curley and Mr. Kaiser, there is not just assets that are being waived, but all rights, obligations between the parties so that they should have nothing other than what is specifically provided for in the agreement. Okay, I... Go ahead, Roger. On this issue of the agreement, you mentioned two things that I think are significant. One, that there was a very competent Connecticut lawyer representing the husband. And secondly, that the main asset was this insurance policy. How can we say that the insurance policy was considered when it was not mentioned with the presence of this very competent lawyer from Connecticut? Well, in the record we have the affidavit of this competent lawyer from Connecticut who states at page 1015 of the record that the release is his standard mutual release clause and it specifically refers to a release of everything except as provided in the separation agreement. Since life insurance is not part of the separation agreement, it is my belief that the express intention of the parties is reflected in this clause and that is that there was a complete waiver of any claim to life insurance by Mrs. Kaiser. And there is no... But that's his legal opinion. That doesn't speak to a fact from which we may infer X. It's his legal opinion based on his understanding of Connecticut law and there is, I submit, no case in Connecticut that says that you need to have an express reference to insurance in order to waive it. That's not what Mark Anderson stands for. The contrary. Yes, but it's very clear under both Pennsylvania law and Connecticut law that if you want to change the beneficiary, there has to be an affirmative action by the owner of the policy to change and there was none here. Well, the court in Anderson v. Anderson, which is the second Connecticut decision which deals with this issue and which was subsequent to Martineau, the court found that the inclusion of a waiver, of a broad waiver provision accomplished the change of beneficiary in and of itself. Well, let me ask you this. If, and I know you might disagree with this, but if we find that either New York or Pennsylvania law applies, is the result that you're seeking foreclosed? I don't know about New York law and I don't know why New York law would apply. Under Pennsylvania law, the cases say that there needs to be an express reference to insurance in order to waive. I agree with that, but the agreement itself says that it is governed by Connecticut law. The parties were married in Connecticut. They lived in Connecticut. They were divorced in Connecticut and the agreement, as I said, itself specifically references Connecticut law. Even if one accepts the notion that under Connecticut law, you have to, you should actually change the beneficiary, does that preclude a constructive trust? If there is a legal remedy, I think that does preclude a constructive trust. The constructive trust comes in when legal remedies are insufficient so that if this court found that either the waiver was ineffective or that the Parsonese decision should be applied or that there was an insufficient act to change beneficiary, those are the arguments we basically make regarding the legal arguments, then we submit that it is clear from the intent of the parties, the pecuniary interest, which is what insurance is generally used for, and the expectations of Mrs. Curley versus Mrs. Kaiser clearly require that a constructive trust be imposed in order to avoid unjust enrichment. On Mr. Kaiser's attempt to change the policy, he did so on the $5,000 mass mutual policy, but there is nothing in that policy, outside of the policy, other than the name of the policy, to show that that was just $5,000. That's correct. That's our point. One of our points is that, in fact, going again to the unjust enrichment and the nature of the mistake made, the form only refers to a policy number. As far as Mr. Kaiser was concerned, that could have referred to the $2 million policy or it could have referred to both policies. Isn't that conjecture? What's not conjecture is that Mr. Kaiser believed, he clearly believed, it's undisputed, that he believed he had changed the beneficiary. So if, in fact, there is no change of beneficiary form with respect to the $2 million policy, I think it's appropriate conjecture that when he signed the form he signed, he thought that that was for the $2 million policy. Okay, we'll get you back after we hear your friend on the other side. Thank you. Is that all right, Ruggie? Fine. That's fine. Good afternoon, Your Honors, and good morning. Judge Eldersert, may it please the Court, my name is Douglas Varga and I represent the appellee, Ellen Kaiser Curley. Your Honors, I also anticipated that we would just be addressing the unjust enrichment issue, but I'm happy to address any concerns you may have on the three real issues in the case, at least from our standpoint. But they really go into unjust enrichment anyway, so go ahead. Your Honor, there are three ways recognized in the law to change a valid beneficiary designation. There's no dispute in this case that there was a valid beneficiary designation in favor of my client, Ellen Curley. The law tells us there are three ways to change it, and the appellant in this case, Mrs. Kaiser, pleaded claims under all three theories. One is that the insured attempted to change it or changed it. The second is that the beneficiary waived it. And the third would be by operation of this statute in Pennsylvania, 611.2. All three of those were pleaded in cross claims. And yet in summary judgment briefing, on the second round of summary judgment briefing, a claim of unjust enrichment was made just in the papers. Well, there was no oral argument, so it had to be on the papers. That's correct, Your Honor, yes. So an unjust enrichment claim was, in our view, thrown in as kind of a catch-all, essentially said if you don't find for me under any of the legally recognized claims, we think this is a case where you should ignore the valid beneficiary designation and just exercise your powers to give it to me. And that's certainly how we viewed it at the time. Is there any evidence that Mr. Kaiser had a good relationship with Mrs. Curley at or about the time the will was written? Well, I'm unsure about Your Honor's reference. I'm looking at intent. I mean, because Connecticut clearly looks at intent. That's correct, Your Honor. Unlike the case that's relied on in the unjust enrichment sphere, the Spinner case, this policy that's at issue here actually was in effect at the time of the party's marriage. Sure. We wouldn't have this case if that wasn't an issue. Correct. Well, Your Honor, in the Spinner case, it was not in effect at the time that the parties were in actual a married situation. But here, this policy was in effect for 10 or 11 years prior to the party's divorce. And although Mr. Kaiser, the insured, had an opportunity to change the beneficiary designation post-divorce, he never did it. And there is a plethora of case law where courts address that issue and say that there are very valid reasons why people keep ex-spouses as beneficiaries in their jurisdictions. Well, that's what I'm asking about. What are the valid reasons in this case? They were involved in litigation, I gather. She had claimed fraud against him. Isn't that right? Your Honor, there was litigation having to do with a partnership that the two were involved in. And that was pretty bitter, I gather, from what I read. Well, that was the representation made by counsel, whether or not it was bitter. There was litigation, there's no doubt. But there's nothing in the record that speaks of bitterness other than, again, what I would consider to be self-serving comments by the competing claimants. Well, is there anything in the record, though, that shows that he had fond feelings for Mrs. Curley at that time? I mean, you know, did he send notes to her, letters? I'm not aware of any of that, Your Honor. All I am aware of is that Mr. Kaiser made Ellen Curley the beneficiary of his life insurance policy. Long before. And never changed it, Your Honor. He had two policies naming her as beneficiary. He called the insurance company. It's in the record. He called the insurance company and asked to change one policy but not the other. She didn't know about that, and she didn't anticipate that. Isn't that right, until somebody told her about the policy? Your Honor, my client was never made aware of any insurance issues after the party's divorce, one way or the other. Now, again, there are certain hearsay issues that seem to be rife in this case, and my client did not engage in hearsay statements because we're not really in a position to speculate as to the insurer's intent. I'm sorry, Your Honor. No, no, go ahead. I believe the insurer's intent is, as it should be, reflected in the beneficiary designation he made. Did you articulate an argument that, based on the pleadings, it was unclear that an unjust enrichment claim had been made? That's true, Your Honor. Quite honestly, we had no idea there was a claim for unjust enrichment or even a theory of unjust enrichment until we saw it in papers on summary judgment. Well, I won't presume. Did you oppose that? Did you inform the court of your surprise and the fact that, in your view, the pleading was deficient? Your Honor, we did not address the procedural issue at that time. We frankly just considered it to be a throw-in argument based on one case that we considered to be readily distinguishable. Because there were only three ways to change a beneficiary designation under the law, those are the ones that we focused on. I will say that the only support for this unjust enrichment claim that is made by Mrs. Kaiser is this Spinner decision, and we believe it's really completely distinguishable. And I can report to this Court, there is not any Court that has ever cited this Spinner decision for the proposition that it's trying to be used for here, and that is that you can then use an unjust enrichment theory to invalidate a valid beneficiary designation. And I think Judge Rambo made that very point. Counsel, I'll just start. The record shows that the owner of this policy was a lawyer, is that right? That's correct, Your Honor. And does the record show what sort of law he practiced? I believe it is in the record that he was a bankruptcy attorney in New York City. Bankruptcy? Yes, Your Honor. All right. Okay. And, Your Honor, I believe the record clearly shows that the insured here knew how to change a beneficiary designation on an insurance policy. Because he tried to do it. He actually tried to do it on the mass mutual policy. No, Your Honor, he did not try to do it. He did it. He called the company, said he wanted to change it. It's in the record because mass mutual officials testified about it. He called and asked about this $5,000 policy and said, please send me the forms. He received the forms, sent them back. They then acknowledged the change and that was that. Did he say the $5,000 policy or did he say the policy? What did he actually say? His communications with mass mutual were about the $5,000 policy. It was a small one. By number, with the $5,000 or by the number of the policy? I believe that I'm not sure what it says. But clearly the communication, and it's in the record, Your Honor, was about this $5,000 policy. No, but what I'm asking is, was it clear that it was only the $5,000 policy or that it could have been the million-dollar policy? Your Honor, we believe it was clear that it was a $5,000 policy. And I can represent that in the record there is a notation in mass mutual's records that say that Mr. Kaiser asked about his million-dollar policy and they said that they would transfer him over to someone else in the company and that's where the trail ends. He never called the number. He never asked for a change of beneficiary policy with the million-dollar, a change of beneficiary form for the million-dollar policy. And after he changed the beneficiary to his new wife on the $5,000 policy, he continued to pay the premiums on both. So we believe, Your Honor, it is utter and complete speculation, these ideas about mistake and inadvertence. Mr. Kaiser, I think the record is clear, was not someone who didn't know his way around papers. He was an attorney and he made a decision. And, again, I reiterate. Is there anything to show that he made an affirmative decision to work only on the $5,000 and not the million-dollar policy? Yes, Your Honor. It is in the record. There is a record of a telephone conversation between Mr. Kaiser, the insured, and officials at mass mutual where he asks about the specific $5,000 policy. By name, by number? Yes. Whether or not he asked about it by name or number, the record clearly reflects that that's what they discussed and that he was told if he wanted to talk to someone about changing a beneficiary on the million-dollar policy, he'd have to talk to another part of the company. But there was never any efforts made to do that. There's nothing in the room. We've been asking you about, you know, do you think there was a mistake, this and that. Is there anything in the record that references a scenario where one could infer it had to have been a mistake? I mean, I'm looking at the beneficiary form. It has a number, 4206361. It obviously has more than one policy. There is nothing that I can see on it that says $5,000 policy, but this is Lord Day and Lord was a Wall Street firm that was in past days the big time in New York. He was a bankruptcy lawyer for many years, started his own practice. Is there anything in the record that would infer that this had to have been, you know, a mistake? Your Honor, quite honestly, I don't see anything that indicates a mistake. The insurance company has confirmed that they never received anything from Mr. Kaiser toward changing the beneficiary designation on this policy, and nothing has been produced by Mrs. Kaiser that would indicate that he ever filled out a change of beneficiary form, that he called the company and orally tried to change nothing. And the company has confirmed, again, that any piece of paper stating his desire to change the beneficiary, as long as it was submitted to the company and signed by him, would have been honored. But he never did that. And there are a multitude of reasons why he never did that, but it is not, I would say. Yes, what are they? Your Honor, I can say. I mean, what are the multitude of reasons since he had, as far as we can tell from the record, no relationship at all with Mrs. Crowley and with the relationship they did have was an adverse one. Your Honor, if you're asking me to speculate, I will be happy to do that. I can tell you this, Your Honor. I'm just asking you what's in the record. Mr. Kaiser and my client were married for some 25 years. They had two children. That's right. And then when they divorced, she gave up, she waived the right to any assets that she had. Your Honor, the settlement agreement is a very lengthy and reticulated agreement. It is very comprehensive about what it includes and what it doesn't include. And it makes no mention of any waiver of any ownership interest or beneficial interest in life insurance. And the law we submit is very clear in both Pennsylvania and Connecticut that if you want to divest yourself of any rights in life insurance, that you have to specifically state it. And we all agree that this settlement agreement between these parties makes no mention of life insurance whatsoever. Your Honor, again, we have to engage in speculation as to what was going on inside the mind of But you said there were many reasons why he would have kept Mrs. Crowley on. And I'm just asking, on the record, what are the reasons? Well, we know that he never changed her and took her off. Well, we know that. That's why we have this case. They had a very lengthy marriage, Your Honor. They had two children together, and he had no will. He had no will, but he had two children. And we can surmise, I think, reasonably so, that Mr. Kaiser, with no will, may have intended these insurance proceeds to be his estate planning for his children. Mind you, Your Honor, he had $2 million of insurance for his current wife and $1 million of insurance for the former spouse. And we would submit that that's estate planning work. And also, Your Honor, there's been evidence submitted in this case about, you know, Mr. Kaiser having a difficult life and everything. And the fact is there were some issues, physical issues, that Mr. Kaiser dealt with during the course of his marriage. And my client dealt with those with him. So I think it's erroneous just to assume that there was no ongoing cordiality between these two people. Okay. So they're not on good terms. And Mr. Fazio, his financial advisor, testified that Mr. Kaiser told them on multiple occasions that Mrs. Kaiser was to receive the death benefits under the policy. That's at 736 to 40 and 779 to 780. That's true, isn't it? Your Honor, Mr. Fazio did, again, this is hearsay testimony. Well. But we also have testimony from a second husband, in front of a second wife, talking about what he may or may not have done with insurance monies. And, Your Honor, I would submit that whether or not, as the district court noted, whether or not Mr. Kaiser intended to do something or thought he might want to do something or tried to do something is beside the point. Well, he died, unfortunately. But what about his application for the prudential policy? Wasn't that to replace this policy? It most likely was, Your Honor. And that listed Mrs. Kaiser as the beneficiary. It did not, Your Honor, no. We think that's a misrepresentation. That application asked for the beneficiary of the policy that would be issued by prudential. It didn't ask for the name of the beneficiary on the existing policy, nor would the insurance company care, quite frankly. If they're going to issue a new policy, they want to know who the beneficiary is going to be on the policy. They don't really care about who the beneficiary is on the existing contract. Well, and who was supposed to be the beneficiary on the new policy? The new policy that Mr. Kaiser was taking out would be his new wife, Karen. Mrs. Kaiser. Correct. Oh, so that does show some intent. Well, it shows an intent for Mr. Kaiser that he wanted to get a new insurance policy. Apparently he was going to, intended to replace this mass mutual policy with a new insurance contract. And ultimately it was issued. But the mass mutual policy was never, it remained in existence. I'm afraid I didn't understand that. The prudential policy was issued? Correct. It was, Your Honor. And who was the beneficiary? The new wife, Mrs. Kaiser. Mrs. Kaiser, we can call her. Correct. But the policy to be replaced, the mass mutual policy, he kept paying the premiums on it. So the prudential policy is for a million? Correct. Ruggie? I have no other questions. Okay. Thank you. Thank you, Your Honor. Thank you. We'll hear a rebuttal from Ms. Posman. Posman? Thank you. I'd just like to correct several statements by Mr. Varga, especially with respect to his responses to certain questions that you asked Judge Sloboder. Mr. Varga said that Mr. Kaiser called to change only one of the policies. That is not accurate. He asked to speak to the person that maintained the million-dollar policy as well, and the mass mutual records state that the person he was speaking to was able to transfer that call. The other department. So he had the opportunity to do the paperwork, but he didn't do the paperwork. No. We believe he spoke with the other division of mass mutual because the call was successfully transferred, and that's why there was the confusion with respect to the change of beneficiary form. He spoke to both. This is speculation, but he spoke to both. On speculation, we're supposed to reverse the summary judgment? No. This is going to intent and to his mistake. We're drawing a lot of dotted lines around here. Well, the record says at page 688 that the person he spoke to about the $5,000 policy was able to transfer Mr. Kaiser to the appropriate person to speak about the million-dollar policy. All right? We don't know. We don't have mass mutual records of any phone call, of any notes that were taken with respect to that phone call. So then your argument is there was a mistake of fact, and he meant the $5,000 policy to go to Mrs. Curley and not the million-dollar policy. No, that he expected both to go to Ms. Kaiser. And the form of – Well, I mean, he either made a mistake in filling out the one form or he didn't, right? Because to be consistent, you'd have to argue that when he filled out the change of beneficiary for 5206361, he must have thought that was the million-dollar policy, so that by not filling out the other one, he must have intended for the $5,000 policy to go to Mrs. Curley. The – and this is at page 769 of the record. The actual change of beneficiary form states the company is authorized and requested to change the policy, IES. In other words, the one policy or policies above as provided in this amendment. And so it was inferred by the IES that this was both policies? Yes, Your Honor. Wow. Okay. Mr. Postman, I'd just like to have one – I meant to ask this before. What is the standard of review, even if it's de novo? What is the burden of proof to establish a constructive trust? It is the judge's discretion. There is wide discretion for the court to do what is just and to provide equity where the law does not provide it. And there are two other things I'd just like to state very quickly. Well, I'm just – I'm just thinking of the Shapiro case in Pennsylvania. Clear, explicit, and unequivocal, though not necessarily uncontradicted evidence. Are you familiar with that case? I don't have it in front of me. But it is – it is here the weight of the evidence. The unequivocal and undisputed evidence is that there was a mistake, that there was intent to provide for his new wife and child, and that there was an expectation on their part. You're arguing that you have made out a case of a mistake on the basis of the high stamp burden of proof. Yes, based on the waiver, based on the failure of the change of beneficiary form to designate the amount of the policy involved or which policy it was, on the basis of the fact that, as in Spinner, the decedent was – can't remember the exact words, but his life was in disruption and upheaval at the time. I understand. I understand your point. I understand the point you're making. Thank you. Thank you. The – Mr. Vargas said that Mr. Kaiser kept paying the premiums on the mass mutual policy after the prudential policy, the replacement policy, was obtained, and that's not correct. In fact, had Mr. Kaiser not died, the policy would have lapsed on December 3rd. Mr. Kaiser died November 25th or 26th in that area. So he did not pay any more premiums on the mass mutual policy. And the prudential policy does say that the beneficiary on the policy being replaced, and this is at page 757, was Mrs. Kaiser, Karen Kaiser. So, again, there's every evidence that in his mind he had changed the policy. It was his intent to change the policy, and he had no reason to provide for Mrs. Curley or Mr. Vargas referred to the fact that they had children. Both children were adults at the time and were provided for, as Mr. Kaiser knew, and it's in the record, in other ways. His father had provided a trust. In what other ways? What other ways? What's not in the record is exactly how. It's reflected that he had provided, but Mr. Kaiser's father had left the trust for the grown children. Okay. Thank you. Anything else? I'm sorry. Is that in the record? What's in the record is that they were provided for by other means. Uh-huh. Okay. Thank you. If there's nothing else, thank you, Your Honors. Thank you. We'll take this matter under advisement. Thank you very much.